**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| SANDER GOMEZ SALCEDO, | : | **Hon. Susan D. Wigenton** |
| | : | |
| Petitioner, | : | |
| | : | Civil No. 12-5958 (SDW) |
| v. | : | |
| | : | |
| ROY L. HENDRICKS, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES**:

    SANDER GOMEZ SALCEDO, A 056 516 668
    Essex County Correctional Center
    354 Doremus Avenue
    Newark, New Jersey 07105
    Petitioner Pro Se

**WIGENTON**, District Judge:

    On September 18, 2012, Sander Gomez Salcedo, a native of Venezuela, filed a Petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention at Essex County Correctional Center in the custody of the Department of Homeland Security ("DHS") on the grounds that it is not statutorily authorized and violates due process guaranteed by the Fifth Amendment.[1]  On January 2, 2013, Petitioner filed a motion to compel respondents to answer, to expedite a hearing on his case, and to restrain respondents from detaining him outside this Court's jurisdiction.  This Court will deny the motion and summarily dismiss the Petition because Petitioner has not alleged facts showing:  (1) he has been detained for more than six months after

---

[1] Petitioner did not pay the $5 filing fee or apply to proceed in forma pauperis.  This Court will therefore order him to pay the filing fee or submit an application to proceed in forma pauperis within 30 days.  See 28 U.S.C. § 2254 Rule 3(b) 2004 advisory committee's note.

the beginning of the removal period, and (2) there is "good reason to believe that there is no significant likelihood of removal [to Venezuela] in the reasonably foreseeable future," as required by Zadvydas v. Davis, 533 U.S. 678, 701 (2001), to make the government respond with evidence sufficient to rebut that showing.

## I.  BACKGROUND

Petitioner is a native and citizen of Venezuela.  He entered the United States as a lawful permanent resident on September 27, 2003.  He alleges that he pled guilty on January 9, 2008, in the Superior Court of New Jersey to possession with intent to distribute ecstasy, and the Law Division sentenced him to a five-year term of imprisonment.  Salcedo asserts that his defense attorney "never advised his client that deportation was a virtual certainty" as a result of the guilty plea and that "[t]he only advice Mr. Salcedo received concerning the consequences of a guilty plea in this case consisted of a very brief comment that the Court made at the January 9, 2008 plea hearing [when] the Court advised Mr. Salcedo that he 'could be deported' as a result of his guilty plea."  (Dkt. 1 at 6.)  Salcedo further alleges that he "has collaterally attacked this very conviction . . . and he has a concurrent motion to vacate his guilty plea . . , which is currently pending." [2]  (Id.)

---

[2] The INA defines "conviction," in relevant part, to mean, "with respect to an alien, a formal judgment of guilt of the alien entered by a court."  8 U.S.C. § 1101(a)(48)(A).  See Acosta v. Ashcroft, 341 F. 3d 218, 222 (3d Cir. 2003).  A conviction must attain finality, however, before it can support an order of removal under the INA.  See Pino v. Landon, 349 U.S. 901 (1955) (per curiam).  "[A] conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived."  Paredes v. Attorney General of U.S., 528 F. 3d 196, 198 (3d Cir. 2008) (quoting Matter of Ozkok, 19 I. & N. Dec. 546, 552 n. 7 (BIA 1988)); see also Marino v. Immigration & Naturalization Service, 537 F.2d 686, 691-92 (2nd Cir. 1976); Aguilera-Enriquez v. Immigration and Naturalization Service, 516 F.2d 565, 570 (6th Cir. 1975); Will v. INS, 447 F. 2d 529 (7th Cir. 1971).  Salcedo contends that he is collaterally attacking his conviction, but he has submitted nothing to this Court showing that direct review of his January 2008 conviction is pending.  Even if Petitioner were currently raising his
(continued...)

On March 23, 2011, immigration officials served Salcedo with a notice to appear for removal and took him into custody. On December 7, 2011, an Immigration Judge ordered his removal. Salcedo appealed to the Board of Immigration Appeals, but withdrew the appeal on March 30, 2012. In the Petition, Salcedo asserts his detention is unlawful because DHS has detained him "for more than six months because ICE has been unable to obtain the travel documents necessary to deport him to VENEZUELA." (Pet. 1 at 1.) He alleges that "Venezuela's abstention regarding the issuance of travel documents is an internal policy of that country an[d] therefore no fault of Petitioner." (Dkt. 1 at 13-14.) He further states:

> Even if the INS has been making regular efforts to secure Petitioner's travel document since his post removal order detention, at this time there must be some concrete evidence of progress . . . . Respondents have not told the Court what was learned about the status of the travel document, such as the reasons for the delay, the assurances from the Embassy that the document is forthcoming, or even whether the Embassy is willing to issue the document to Petitioner at all . . . .
>
> An affirmative representation from DHS/ICE about the likelihood of Petitioner's removal in the reasonably foreseeable future remains to be seen . . . .

---

[2](...continued)
ineffective assistance of counsel claim in a pending state petition for post-conviction relief, this fact would not alter the finality of the conviction for immigration purposes because "such pendency does not vitiate finality, unless and until the convictions are overturned as a result of the collateral motions." Paredes, 528 F. 3d at 198-99; see also Medina Lopez v. Attorney General of U.S., 425 Fed. App'x 146, 150 (3d Cir. 2011); United States v. Garcia-Echaverria, 374 F. 3d 440, 445-46 (6th Cir. 2004); Okabe v. Immigration and Naturalization Service, 671 F.2d 863, 865 (5th Cir. 1982).

If Salcedo's direct appeal of his conviction is in fact pending before the New Jersey Appellate Division or New Jersey Supreme Court, then Petitioner may ask this Court to reopen this proceeding on that basis. If Petitioner's conviction is vacated pursuant to a post-conviction motion or other collateral attack, then it may no longer provide a basis for his removal. See Pinho v. Gonzales, 432 F. 3d 193, 210 (3d Cir. 2005); Sawkow v. Immigration and Naturalization Service, 314 F.2d 34, 37 (3d Cir. 1963). In that event, the proper course for petitioner would be to file a motion before the Immigration Judge to terminate removal proceedings. See Matter of Rodriguez-Ruiz, 22 I. & N. Dec. 1378 (BIA 2000).

3

>Looked at another way, the DHS/ICE's presumptive success in removing numerous aliens to VENEZUELA speaks to the likelihood, or rather, the lack thereof, of removing Mr. Salcedo in the reasonably foreseeable future.  If the DHS/ICE asserts that it routinely removes aliens to VENEZUELA, then this fact may underscore the problems it is having in removing Petitioner, particularly since Petitioner has been in DHS/ICE Post-Removal Order custody since March 30, 2012, and his travel documents ha[ve] been "requested" from the Embassy and "pending" since at least March 2012.
>
>Clearly ample time has passed in order for DHS/ICE to obtain a travel document that has been "pending now for close to one year.

(Dkt. 1 at 18-19) (paragraph numbers omitted).

Further, in his motion, Salcedo states without elaboration:  "It is patently obvious they are unable to obtain travel documents."  (Dkt. 2 at 4.)  Salcedo asserts that he is neither a flight risk nor a danger to the community, and that his prolonged detention beyond six months without a bond hearing violates due process.  He seeks a writ of habeas corpus directing respondents to immediately release him or to explain at a hearing why he should not be immediately released.  In addition, Salcedo filed a motion to expedite his Petition and for an injunction restraining respondents from transferring him to a facility outside this Court's jurisdiction.[3]

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v.

---

[3] As this Court is dismissing the Petition, the motion will be denied as moot.

Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his constitutional rights.  See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005).

B.  Standard of Review

Habeas Rule 4 requires a district court to examine a habeas petition prior to ordering an answer and to dismiss the petition if the petitioner is not entitled to relief.  See 28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).  Habeas Rule 4 provides in relevant part:

> The clerk must promptly forward the petition to a judge . . . and the judge must promptly examine it.  If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."  McFarland v. Scott, 512 U.S. 849, 856 (1994); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985).  Dismissal without the filing of an answer or the State court record is warranted "if it appears on the face of the petition that petitioner is not entitled to relief."  Id.; see also McFarland, 512 U.S. at 856; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").

C.  Legality of Detention

The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . .").  See Demore v. Kim, 538 U.S. 510 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process").

As in this case, once an alien's order of removal is final, the Attorney General is required to remove him or her from the United States within a 90-day "removal period."  See 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').")  8 U.S.C. § 1231(a)(1)(A).  This 90-day removal period begins

> on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section § 1231(a)(2) requires the DHS to detain aliens during this 90-day removal period. See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the

alien"). However, if the DHS does not remove the alien during this 90-day removal period, then § 1231(a)(6) authorizes the DHS to thereafter release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. To guide habeas courts, the Supreme Court recognized six months as a presumptively reasonable period of post-removal-period detention. Id. at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

In this case, Salcedo's order of removal, see 8 U.S.C. § 1101(a)(47)(A), became administratively final when he withdrew his appeal to the BIA on March 30, 2012.[4]  Since 8 U.S.C. § 1231(a)(1)(B)(i) provides that the removal period begins on the "date the order of removal becomes administratively final," Petitioner's removal period began on March 30, 2012, when Salcedo withdrew his appeal.  Accordingly, the six-month presumptively reasonable period of post-removal-period detention expired on October 1, 2012.  Salcedo appears to contend that, once the six-month presumptively reasonable period of post-removal period detention has expired, the government has the burden of showing that his removal is reasonably foreseeable.  To the contrary, the Zadvydas Court held that the burden is on the petitioner:  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Zadvydas, 533 U.S. at 701.  As the Third Circuit explained,

> Once the six-month period has passed, the burden is on the alien to 'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . .' Zadvydas v. Davis, 533 U.S. 678, 701 . . . (2001).  Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.' Id.

Barenboy v. Attorney General of U.S., 160 Fed. App'x 258, 261 n.2 (3d Cir. 2005).

Salcedo's "has made no showing whatever that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  Encarnacion-Mendez v. Attorney General of U.S.,

---

[4] An order of removal becomes "final upon the earlier of - (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."  8 U.S.C. § 1101(a)(47)(B); see also 8 C.F.R. § 1241.1; Giraldo v. Holder, 654 F.3d 609, 611 (6th Cir. 2011); Hakim v. Holder, 611 F.3d 73, 77 (1st Cir. 2010); Chupina v. Holder, 570 F.3d 99, 103 (2d Cir. 2009); United States v. Calderon-Minchola, 351 Fed. App'x 610, 611 n.1 (3d Cir. 2009).

8

176 Fed. App'x 251, 254 (3d Cir. 2006). Accordingly, Salcedo's Petition must be summarily dismissed under Zadvydas because it does not show that his detention is statutorily unauthorized or violates due process.[5] See, e.g., Joseph v. United States, 127 Fed. App'x 79, 81 (3d Cir. 2005) (affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6): "Under Zadvydas, a petitioner must provide 'good reason' to believe there is no likelihood of removal, 533 U.S. at 701, and Alva has failed to make that showing here"); Soberanes v. Comfort, 388 F. 3d 1305 (10th Cir. 2004) (affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6) where petitioner failed to provide good reason to believe that there is no likelihood of removal); Akinwale v. Ashcroft, 287 F. 3d 1050, 1052 (11th Cir. 2002) ("in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). This Court will dismiss the Petition for failure to assert that Petitioner is detained contrary to the laws, the Constitution or treaties of the United States.[6] Id.

---

[5] Salcedo does not contend that he is entitled to habeas relief on the ground that DHS failed to comply with regulations. See 8 C.F.R. § 241.4. In any event, Salcedo attached the Field Office Director's decision dated June 26, 2012 (Dkt. 1-3 at 5), to continue Salcedo's detention, which appears to comply with 8 C.F.R. § 241.4(k)(1)(i) and 241.4(h). The decision states: " You were advised of this custody review and have not submitted any documentation in support of your release. You have not submitted evidence to demonstrate that you would not pose a threat or risk of flight if released. In addition, ICE is currently working with the Consulate of Venezuela on obtaining a travel document for your removal from the United States." (Dkt. 1-3 at 5.)

[6] The dismissal is without prejudice to the filing of a new § 2241 petition (in a new case) in the event that Petitioner can allege facts showing that there is good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. See Akinwale, 287 F. 3d at 1052 ("Because circumstances may ultimately change in [petitioner's] situation, we affirm the dismissal [of his habeas petition] without prejudice to [his] ability to file a
(continued...)

### III.  CONCLUSION

The Court will deny Petitioner' motion and dismiss the Petition.

                                        s/Susan D. Wigenton, U.S.D.J.
                                        **SUSAN D. WIGENTON, U.S.D.J.**

DATED: January 7, 2013

---

[6](...continued)
new § 2241 petition in the future"). In addition, if Petitioner believes he is unlikely to be removed in the near future, he may request the DHS to administratively review his continued detention. See 8 C.F.R. § 241.13(d)(1) ("An eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future").